IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARRYL L. PULIS,

       Plaintiff,                     No. CIV S-05-2088 LKK CMK

   vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,      AMENDED FINDINGS

       Defendant.                  AND  RECOMMENDATIONS
_____/

       Plaintiff, Darryl Pulis, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his application for Social Security insurance disability benefits (DIB) under the provisions of Title II of the Social Security Act.   The parties have filed cross motions for summary judgment.  For the reasons discussed below, the court recommends that plaintiff's motion for summary judgement be denied; that the Commissioner's motion for summary judgment be granted and; that this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 504(g) for evaluation of whether plaintiff's alcohol abuse was material to his mental limitations.

I. <u>Background</u>

       Plaintiff applied for DIB on December 8, 2003, claiming disability based on knee, back, foot, and arm pain. (Tr. 45, 87.)   In his application, plaintiff claimed that his impairments began on January 1, 1990. (Tr. 45.) Plaintiff was 53 years old at the time of the Administrative

1

Law Judge's (ALJ) decision, and he has a ninth grade education. (Tr. 290-291.) Plaintiff's past work was as an apartment maintenance man. (Tr. 291.)

Plaintiff's application was denied initially and upon reconsideration. A hearing was held before ALJ Acevedo-Torres on January 5, 2005. Plaintiff was represented at the hearing by an attorney. Plaintiff testified that he was unable to work because he could not move–he could not bend and was unable to stand on his feet more than ten minutes. (Tr. 292.) Plaintiff stated that he had problems walking, standing and sitting and could only walk a block. (Tr. 295.) Plaintiff stated he could ride his bike one mile and that riding his bike was easier on his knees. (Tr. 296.) Plaintiff stated that he went to the doctor whenever he could afford it and took pain medication every day for his back and knees. (Tr. 294.) Plaintiff spends his days in the park. Plaintiff indicated that he had been homeless for nine or ten years. (Tr. 300-301.) Plaintiff stated that he used to drink vodka, but stopped when he started throwing up. (Tr. 296-297.) Plaintiff drinks mostly mountain dew and occasionally has a beer. (Tr. 296, 298-299.) Plaintiff presented medical evidence in support of his DIB application.

In his, May 18, 2005 decision, the ALJ made the following findings:

1. The claimant did not engage in substantial gainful activity after January 1, 1990.
2. The medical evidence establishes that the claimant has degenerative disc disease and obesity, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix I, Subpart B, Regulations No. 4.
3. The claimant's subjective complaints are not fully credible and not supported by the evidence of record.
4. The claimant has the residual functional capacity to perform medium work and activity.
5. The claimant's past work as a maintenance man does not require the performance of the work related activities precluded by the above limitations (20 CFR 404.1565

and 416.965).

    6.    The claimant's impairments do not prevent the claimant from performing his past relevant work.

    7.    The claimant was not under a "disability" as defined in the Social Security Act, at any time on through the date of this decision.

(Tr. 20.)

Based on these findings, the ALJ concluded that plaintiff was not entitled to a period of disability or DIB. The decision of the ALJ became final when the Appeals Council denied plaintiff's request for a review on August 26, 2005. Plaintiff filed a timely appeal in this court.

II. Standard of Review

This court's review is limited to whether the Commissioner's decision to deny benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole. See Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and

1  may be set aside only if an improper legal standard was applied in weighing the evidence. See
2  Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).
3  III.    Discussion
4         In his motion for summary judgment or remand, plaintiff argues that the ALJ erred
5  by failing to properly consider plaintiff's obesity and by failing to obtain vocational expert
6  testimony.
7         A.      Failure to Properly Consider Obesity
8         Plaintiff's first argument of error is that the ALJ failed to properly consider his
9  obesity in establishing whether plaintiff could perform his past relevant work.   It is the ALJ's
10 responsibility to determine the effects of a claimant's obesity on his other impairments, as well as
11 its effect on his overall health and ability to work, given the existence of other impairments.  See
12 Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003).  Here, obesity is apparent from the record;
13 indeed it was expressly noted by plaintiff's examining and consultative physicians.
14        John Cu, M.D. performed an orthopedic evaluation of plaintiff, at Social Security's
15 request, on February 4, 2004.  (Tr. 166-170.)  The evaluation recorded plaintiff's height as 71
16 inches and his weight at 315 pounds.  Dr. Chu noted that plaintiff was "moderately obese and that
17 his symptoms were consistent with degenerative joint disease of his elbows and knees.  (Tr. 170.)
18 Dr. Chu noted degenerative disc disease of the thoracic and lumbar spine, confirmed by x-ray.
19 (Id.)  Dr. Chu observed that plaintiff could sit and stand from the examination room table without
20 difficulty, that he walks without a limp, and is able to grasp objects with normal coordination.
21 (Tr. 168.)   Dr. Chu opined that plaintiff could "lift/carry 50 lbs. occasionally and 25 lbs.
22 frequently.  He can stand, walk, or sit 6 hours in an 8 hour workday."  (Id.)
23        Plaintiff was examined, at his attorney's request, by Douglas Haselwood, M.D.
24 and by William Stansell, M.D. (Tr. 219-222; 261-269.)  Dr. Haselwood noted that plaintiff was
25 "extremely obese...seemingly somewhat short of breath with consistent exacerbations with
26 minimal exertional activity."  (Tr. 220.)  He noted that plaintiff was not in aggressive medical

4

management for his potentially fatal health problems.  (Tr. 221.)  Dr. Haselwood opined that plaintiff was "limited to a narrow range of sedentary vocational functionality with standing/walking limited to four hours or less in an eight hour day with a one-half hour maximum of lifting/carrying limited to 15 pounds occasionally and five pounds or less frequently."  (Tr. 221.)  Dr. Haselwood went on to opine that he "doubt[ed] that Mr. Pulis has the capability of sustained full-time gainful employment even under the most sedentary and accommodating of settings."  (Id.)

During his examination, Dr. Stansell noted that plaintiff was very obese (over 350 pounds) and had difficulty breathing while laying on his back. (Tr. 262.)  He noted that plaintiff had a fairly good range of motion in his back and good range of motion of all joints.  (Tr. 262.) Dr. Stansell noted that plaintiff's lumbar pain was aggravated by his weight.  (Tr. 265.)  Dr. Stansell opined that plaintiff had significant limitations in his physical functions and significant environmental restrictions.  (Tr. 266.)  Notably, Dr. Stansell found that plaintiff could not stand or walk for any amount of time during a normal workday, but that he could sit and that plaintiff could never climb, balance, stoop, crouch, crawl, or kneel.  (Tr. 266.)

Contrary to plaintiff's assertion, the ALJ considered the effect of his obesity on his other impairments.  The ALJ acknowledged that plaintiff's ability to perform work was "somewhat limited by his weight."  (Tr. 19.)  However, he found that limiting plaintiff to medium work activity[1] would accommodate any limitations that plaintiff might experience because of his weight or his musculoskeltal complaints.  (Tr. 19, 20.)  The court finds that the underlying record supports the ALJ's finding that the ALJ properly considered plaintiff's obesity and that, despite his obesity,  plaintiff is capable of performing medium work activity.

The ALJ relied on the opinion of consultative examiner, Dr. Chu, who noted that

---

[1] Medium work involves lifting no more than fifty pounds at a time and frequent lifting or carrying of objects weighing up to twenty-five pounds.  If someone can do medium work, they can also do sedentary and light work.  20 C.F.R. §§ 404.1567(c); 416.967(c).

5

plaintiff was obese, but opined that plaintiff could still perform medium work. (Tr. 170.) See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ considered the opinions of the other examining physicians, Drs. Haselwood and Stansell. He noted that both doctors' opinions had been solicited by plaintiff's counsel. (Tr. 16.) See Saelee v. Chater, 94 F.3d 520, 522-523 (9th Cir. 1995)(noting that ALJ may consider the purpose for which a medical report was obtained). While it is true that two other physicians opined that plaintiff was far more restricted in his ability to work by the combination of his obesity and musculoskelatal complaints, the ALJ found that neither of these opinions was supported by any objective clinical findings. (Tr. 16.) See 20 C.F.R. § 404.1529(a) (a claimant's subjective allegation of pain is not sufficient in itself to establish disability). The ALJ considered that plaintiff's examinations did not reflect any muscle wasting or atrophy which is usually associated with pain and inactivity. (Tr. 18.)

Finally, in making his decision, the ALJ considered that plaintiff was able to ride a bicycle and to independently conduct other daily living activities. As plaintiff points out, one does not need to be "utterly incapacitated" in order to be disabled. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1988). The fact that a plaintiff is able to carry on certain daily activities does not detract from a plaintiff's credibility as to his overall disability. See Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). Activities such as riding a bicycle for transportation and being able to independently care for one's self are not necessarily transferable to the work setting with regard to the impact of pain. See id. As noted in Vertigan, a person could engage in exercise activities "despite pain for therapeutic reasons, but this does not mean that [the person] could concentrate on work despite the pain..." Id. (emphasis in original). Here, plaintiff may ride his bicycle, despite pain, because it is his only form of transportation and may independently manage daily living activities because he has no other option.

Despite these possibilities there is more than a scintilla of evidence in the record to indicate that the ALJ properly considered the impacts of plaintiff's obesity and to support the ALJ's findings regarding plaintiff's disability. The ALJ did not, as plaintiff appears to contend,

6

rely only on plaintiff's bicycle riding in finding that plaintiff's impairments were not as debilitating as he or Drs. Haselwood and Stansell suggested. The ALJ considered that no objective clinical findings supported the limitations assessed by Drs. Haselwood and Stansell, that plaintiff had no muscle wasting and atrophy, and that he had not been referred by examiners for further treatment of his symptoms. (Tr. 18-19.)

There is conflicting evidence in the medical record regarding the impact of plaintiff's obesity on his limitations. When conflicting medical evidence is present, it is the ALJ's responsibility to resolve the conflict; it is not the court's province to substitute its own judgment after a reading of the administrative record. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). The court finds that the ALJ properly considered plaintiff's obesity in the residual functional capacity assessment in the step two analysis.

B.  Failure to Obtain Expert Vocational Testimony

Plaintiff next argues that the ALJ erred in failing to obtain vocational testimony based on the most recent evidence of plaintiff's mental and physical impairments. After a claimant satisfies his initial burden of showing that a physical or mental impairment prevents him from performing his previous work, the burden shifts to the Commissioner to show that the claimant has the capacity to perform other work and that such other work exists in the national economy. See Bonilla v. Secretary of Health, Education & Welfare, 671 F.2d 1245, 1246 (9th Cir.1982) (per curiam). In other words, no vocational expert is needed if a plaintiff fails to satisfy his burden of showing that he was unable to perform his past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv); Tackett v. Apfel, 180 F.3d 1094, 1098-1099 (9th Cir. 1999)(claimant has the burden of proof for steps one through four, and the Commissioner bears the burden of proof at step five).

Plaintiff suggests, however, that for progressively worsening conditions, such as his, that the most recent medical records are the most probative; therefore, the ALJ erred in basing

7

his residual functional capacity determination on Dr. Chu's 2004 assessment because plaintiff was examined in 2005 by Dr. Stansell and by Steven McIntire[2], a neurologist. Dr. McIntire observed that plaintiff did not show significant loss of motion and opined that plaintiff could stand and walk, six to eight hours in an eight-hour day, should avoid squatting, kneeling, and crawling activities, but could occasionally climb and stoop, could lift and carry fifteen pounds frequently or thirty pounds occasionally, and had no other limitations. (Tr. 255.)

Plaintiff also asserts that the ALJ improperly ignored the opinion of Barry N. Finkel, Ph.D, who gave plaintiff a psychiatric evaluation. Dr. Finkel noted that plaintiff appeared twenty minutes early for his appointment, presenting an unkempt appearance (dirty clothing, long hair and a full beard); however, plaintiff was alert and interacted normally. (Tr. 175, 177.) Plaintiff reported drinking daily since his teens and that he drank, on average, three gallons of vodka a week. (Tr. 176.) Dr. Finkel opined that plaintiff suffered from depression, could follow simple instructions, was moderately impaired in his ability to interact with co-workers, had moderately impaired pace and attention and that his ability to work over an eight-hour day and follow a regular work schedule was markedly impaired due to chronic pain and limited mobility. (Tr. 177-178.)

Plaintiff argues that because the ALJ failed to give controlling weight to the opinions of Drs. Stansell and McIntire and ignored the opinion of Dr. Finkel, he erred in finding, at step four, that plaintiff was capable of performing his past work. Plaintiff appears to contend that because, if the ALJ had properly evaluated the evidence, plaintiff would have been found incapable of performing his past work, the burden shifts to defendant to demonstrate, through vocational testimony, what jobs in the national economy plaintiff is capable of performing. (Pl.'s Mot. Summ. J. at 12:18-26.)

As previously noted, conflicts did exist in the medical evidence in this case, and it

---

[2]Plaintiff visited Dr. McIntire for a neurological workup, however, he did not present neurological complaints. Instead, he detailed complaints of lumbar and knee pain. (Tr. 255.)

was the responsibility of the ALJ to resolve those conflicts. See Andrews, 53 F.3d at 1041. The record supports the ALJ's evaluation of the evidence concerning plaintiff's physical limitations. The ALJ credited the report of Dr. Chu, which was supported by objective medical evidence. (Tr. 15-19.)  He discredited those reports which were based on plaintiff's subjective complaints. (Id.) The ALJ considered Dr. Finkel's evaluation of plaintiff. (Tr. 16-17.) The ALJ discounted Dr. Finkel's opinion regarding plaintiff's impairment to work because such opinions were outside the realm of Dr. Finkel's expertise. (Tr. 17.)  The court finds that substantial evidence in the record supports the ALJ's determination that, based on his physical impairments, plaintiff could perform his past work.

The court, however, finds that the ALJ did not properly evaluate plaintiff's alleged mental impairment. In step four, the ALJ evaluated plaintiff's mental impairment using the "B" criteria of 20 C.F.R. 404.1520(a). (Tr. 17). He found that, because plaintiff is able to perform daily living tasks, has little difficulty in social functioning and was not found during any examination to have significant difficulty in concentration, persistence, or pace, plaintiff's degree of mental impairment in these key areas was mild and he did not have a severe mental impairment. (Tr. 17).[3]  The ALJ noted that "any psychiatric symptoms that the claimant may experience appear to be directly related to his alcohol abuse." (Tr. 17.)

The ALJ properly stated that persons for whom alcohol addiction is a material factor to the determination of their disability are not eligible for disability benefits under the Social Security Act. (Tr. 17-18.)  The ALJ stated that "material" means that the person would not be found disabled if he or she stopped using alcohol, and that the key factor in determining whether alcoholism is a contributing material factor to the determination of disability is whether the individual would still be disabled if he stopped using alcohol. (Tr. 18.)  The ALJ found that

---

[3]The ALJ found that because the record does not contain any evidence of chronic, organic, mental disorder of at least two years, he did not have to evaluate plaintiff's mental impairment using the "C" criteria. (Tr. 17.)

9

"[t]he record as a whole shows that any symptoms that the claimant may experience arise from his history of alcohol abuse.  The record does not contain any objective findings, since the claimant alleged that he stopped using alcohol, which shows that his ability to perform the mental demands of work is significantly [impaired]."  (Tr. 18.)

In objections to the January 19, 2007 findings and recommendations, plaintiff argues that the ALJ failed to apply the correct legal standard when an individual has a diagnosis of alcohol dependance and other severe mental impairments.  After further review, the court agrees.  In determining whether alcoholism is a contributing factor material to disability, the ALJ "will evaluate which of [the claimant's] current physical or mental limitations...would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling."  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).  In his evaluation, the ALJ failed to properly consider which of plaintiff's mental limitations remained after plaintiff stopped abusing alcohol.  Instead, the ALJ appears to have simply assumed that, because plaintiff stopped excessively drinking alcohol, his limitations were mild.  This finding ignores Dr. Finkel's conclusions that plaintiff was mildly to moderately impaired in his ability to interact with others and mildly to moderately impaired in attention and pace.  (Tr. 178.)  The court finds that the ALJ did not properly evaluate plaintiff's mental impairment at step four.

Accordingly, the court will recommend that this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 504(g) for evaluation of whether plaintiff's alcohol abuse was[4] material to his mental limitations.  Depending on the result of this evaluation, it may be appropriate for the ALJ to obtain the testimony of a vocational expert.

///

---

[4]The court uses the past tense because the psychological evaluation was done when plaintiff was still drinking three gallons of vodka a week, and plaintiff testified that he no longer drink such an amount.

10

IV.     Conclusion

        For the foregoing reasons, IT IS RECOMMENDED that:

        1. The Commissioner's motion for summary judgment be denied.

        2. Plaintiff's motion for summary judgment be denied.

        3. This matter be remanded under sentence four of 42 U.S.C. § 405(g) for further findings addressing the deficiencies noted above.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 29, 2007.

                                              **CRAIG M. KELLISON**
                                              UNITED STATES MAGISTRATE JUDGE